**SO ORDERED.**

**SIGNED this 21 day of June, 2012.**

_____

**Randy D. Doub**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### WILSON DIVISION

IN RE:

**THOMAS E. BROWN, III**       **CHAPTER 11**
             **CASE NUMBER: 07-02856-8-RDD**

  **Debtor**

**ETHERIDGE OIL COMPANY, INC.**    **ADVERSARY PROCEEDING**
             **NUMBER: 08-00230-8-RDD**

  **Plaintiff**

  **v.**

**THOMAS E. BROWN, III, MICHAEL
K. BARNES, W. WATSON BARNES,
DAVID W. WOODARD, ROBIN
BROWN MERRITT, and BROWN OIL
COMPANY, INC., GEORGE MASON
OLIVER**

  **Defendants**

## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

THIS MATTER coming on to be heard and being heard before the undersigned United States

Bankruptcy Judge, Honorable Randy D. Doub, Judge Presiding at the May 15, 2012 term of the

United States Bankruptcy Court for the Eastern District of North Carolina, Wilson Division, pursuant

to the trial of issues set forth in that certain Amended Complaint filed herein on or about October 15, 2010; and, the Court having considered the testimony of witnesses and other evidence presented by the Plaintiff and the Defendants beginning on May 15, 2012 with the Court being recessed at the conclusion of the day on May 15 and reconvened on May 21, 2012; and, the Court after considering the evidence, trial briefs submitted by the parties, matters of record, and the arguments of counsel, hereby makes the following:

**PROPOSED FINDINGS OF FACT**

1. Plaintiff, Etheridge Oil Company, Inc. ("Plaintiff') is a domestic North Carolina corporation having its principal place of business in Kenly, Johnston County, North Carolina.

2. Defendant, Thomas E. Brown, III ("Brown"), is a citizen and resident of Wilson, Wilson County, North Carolina.

3. Defendant, Michael K. Barnes ("M. Barnes"), is a citizen and resident of Wilson, Wilson County, North Carolina.

4. Defendant, W. Watson Barnes ("W. Barnes"), is a citizen and resident of Wilson, Wilson County, North Carolina.

5. Defendant, David W. Woodard ("Woodard"), is a citizen and resident of Wilson, Wilson County, North Carolina.

6. Defendant, Brown Oil Company, Inc. ("Brown Oil"), is a domestic North Carolina corporation which operated a principal place of business being located in Wilson, Wilson County, North Carolina.

7. Brown initiated a voluntary petition under Chapter 11 of the Bankruptcy Code (Case Number: 07-02856-8-RDD) on or about August 3, 2007.

8.      Brown's Chapter 11 petition was dismissed by this Court on November 30, 2011; and a Motion To Reconsider such dismissal was filed by Robin Brown Merritt (now known as Robin Brown Farrin) on December 1, 2011, and denied on January 25, 2012.

9.      An involuntary bankruptcy petition was filed against Brown Oil on October 19, 2010 (Case Number: 10-08577-8-RDD); and George Mason Oliver, Esquire, was appointed as Chapter 7 Trustee for Brown Oil on February 4, 2011.

10.     M. Barnes filed a voluntary bankruptcy petition under Chapter 13 of the Bankruptcy Code on July 19, 2011 (Case Number: 11-05482-8-RDD); and Robert R. Browning, Esquire, was appointed as Chapter 13 Trustee.

11.     This Adversary Proceeding was called for trial by this Court on May 15, 2012 pursuant to a Scheduling Order entered by this Court.

12.     The underlying claims at issue are based on North Carolina state law and are brought by a creditor as a necessary part of the claims process as to Brown Oil. *Etheridge Oil Co. v. Brown, (In re Brown)*, No. 08-00230-8-RDD at 2 ¶ H (Bankr. E.D.N.C. March 13, 2012).  Therefore, this Court has jurisdiction to hear this cause of action pursuant to 28 U.S.C. 151, 157(a) and the general Referral Order from the U.S. District Court, Eastern District of North Carolina dated August 3, 1984 as set forth in that certain Consent Order entered by this Court on March 13, 2012. *Id*.  The parties "consent to this Court hearing any non-core claims asserted in this adversary proceeding pursuant to 28 U.S.C. § 157(c)(1) and for the Honorable Randy D. Doub to submit proposed findings of fact and conclusions of law related thereto to the District Court

as provided under Bankruptcy Rule 9033." *Id.* at 3 ¶ I.

13.    Plaintiff has filed an objection to the dischargeability of its debt as against Brown in Case Number: 07-02856-8-RDD. Plaintiff has not filed an objection to the dischargeability of its debt as against M. Barnes in Barnes' Chapter 13 proceeding identified as Case Number: 11-05482-8-RDD.

14.    This is an action, inter alia, in which Plaintiff seeks to recover a money judgment against Brown Oil and the individual Defendants, Brown, M. Barnes, Woodard, and W. Barnes.

15.    By separate orders, the Court has entered judgment against Brown Oil on the claim for a money judgment and dismissed the nondischargeability claims as against Brown and found any nondischargeability claims against M. Barnes as not properly pled.

16.    In 2005, Wilson Petroleum Company, Inc. and Brown Oil Company, Inc. merged to form one corporation, Brown Oil, which engaged in the sale of petroleum and petroleum products, including but not limited to gasoline ("fuel"), in Wilson County and surrounding counties in eastern North Carolina. At the time of the merger, Brown Oil designated a new board of directors consisting of Brown, M. Barnes, W. Barnes, and Woodard.

17.    During the period from the merger in 2005 until some time in 2009, M. Barnes and Brown served as employees and the managing officers who conducted day to day operations of Brown Oil including, but not limited to, the buying and selling of fuel. Brown's employment as a managing officer of Brown Oil was terminated in 2009. M. Barnes' employment as the managing officer of Brown Oil continued until the filing of an involuntary bankruptcy petition against Brown Oil in October, 2010.

18.    In December, 2007, Plaintiff and Brown Oil entered into a contractual agreement whereby Plaintiff would sell fuel to Brown Oil for the use and benefit of Brown Oil's customers.  This contractual agreement also included the signing by both parties of an Automated Clearing House Agreement ("ACH Agreement") which authorized, among other things, Plaintiff to make automatic direct drafts from Brown Oil's bank account with Branch Banking & Trust Company ("BB&T") for the payment of fuel received by Brown Oil from Plaintiff.

19.    At all times during the period from December 2007 through June 2008, when Plaintiff supplied fuel to Brown Oil pursuant to the contractual agreements, Plaintiff was an unsecured creditor of Brown Oil.

20.    At all times during the period from December 2007 through June 2008, BB&T was a secured creditor of Brown Oil with liens on Brown Oil assets, including but not limited, to all accounts receivable.

21.    During January 2008, Brown Oil defaulted on fuel payments due to Plaintiff in an amount in excess of $50,000.00.

22.    Brown Oil agreed to cure the January 2008 payment defaults within a reasonable period of time, and Plaintiff agreed to continue supplying fuel to Brown Oil pursuant to the December 2007 contractual agreement.

23.    In April 2008, Brown Oil again defaulted on fuel payments due to Plaintiff, and Plaintiff again agreed to carry this payment default as an accounts receivable until such time as Brown Oil could cure the default.

24.    During the period from June 12, 2008 through June 16, 2008, Brown Oil accepted deliveries of fuel from Plaintiff, but defaulted on multiple fuel payments due to

Plaintiff in an amount in excess of $400,000.00.

25. On June 16, 2008, Plaintiff terminated the agreement by and between the parties due to payment defaults and refused to deliver fuel to Brown Oil.

26. On June 18, 2008, Brown Oil, by and through M. Barnes, directed BB&T to terminate the automatic draft of its account in favor of Plaintiff (ACH Agreement) due to Plaintiff's termination of the contractual agreement with Brown Oil.

27. As a result of the termination of the contract with Plaintiff, Brown Oil was required to curtail some of its business operations but continued to engage in business as a seller of fuel through and including the time of the filing of the involuntary petition in October 2010.

28. Brown Oil has made no payments to Plaintiff since June 2008 for the sale of fuel by Plaintiff to Brown Oil.

29. On July 3, 2008, Michael Doty, Chief Operating Officer for Plaintiff, signed a verified Complaint which was filed in Johnston County Civil Superior Court on July 18, 2008. Plaintiff sought relief in this Complaint against Brown Oil and the named individual Defendants, inter alia, for a money judgment, the imposition of an equitable lien and/or constructive trust against all assets of Brown Oil and the appointment of a receiver as to some of the operations of Brown Oil.

30. On October 30, 2008, Plaintiff filed this adversary proceeding, which also sought relief, inter alia, against Brown Oil and the named individual Defendants for a money judgment, the imposition of an equitable lien and constructive trust on Brown Oil assets as well as the appointment of a receiver.

31. During the period from the filing of this adversary proceeding on October 30, 2008

through and including the date of trial, Plaintiff has not requested this Court to impose an equitable lien, constructive trust, appointment of receiver or any other protective remedy in favor of Plaintiff against Brown Oil and the named individual Defendants.

32.   In June 2008, Brown Oil owed certain secured indebtedness to BB&T identified as Note #51 (balance of approximately $1,000,000.00), Note #52 (balance of approximately $300,000.00) and Note #54 (line of credit with balance of approximately $439,000.00).

33.   As security for theses notes, BB&T had a perfected lien on all accounts receivable, equipment, and inventory of Brown Oil.  Brown Oil held its operating checking account with BB&T.

34.   During the period from January 2007 through the fall of 2010, BB&T made demands upon Brown Oil to liquidate secured assets including, but not limited to, Merrill Lynch stock valued in excess of $400,000.00 to pay down secured debt owed to BB&T as set forth herein.

35.   During the period from January 2007 through the filing of the involuntary bankruptcy petition against Brown Oil in October 2010, Brown Oil paid to BB&T the full amount of the three (3) notes due in an amount in excess of $1,750,000.00 including, but not limited to, certain payments made on behalf of Brown Oil by W. Barnes as a guarantor of the BB&T debt.

36.   During the period from 2006 through 2009, Brown Oil filed state and federal tax returns listing gross yearly sales in excess of $30,000,000.00 (2006), $20,000,000.00 (2007), $11,700,000.00 (2008), and $2,800,000.00 (2009).

37.    During the period from the time of the merger of the corporations in 2005 until the filing of the involuntary bankruptcy petition in 2010, the board of directors of Brown Oil met one time on February 12, 2007 to discuss the execution of a BP Agreement and the liquidation of certain life insurance assets (at the request of the secured creditor BB&T).  There were no other meetings of the board of directors of Brown Oil during the above period except for the February 12, 2007 meeting.

38.    The board of directors of Brown Oil at no time neither discussed nor considered a plan to wind-up the business operations and/or dissolve the corporation during the period from the time of the merger in 2005 until the filing of the involuntary bankruptcy petition in October 2010.  Brown Oil held itself out and represented itself to the public and its creditors as an operating and viable corporation.

39.    The Defendants, W. Barnes and Woodard, made no decisions nor took any part in the day-to-day operations of Brown Oil during the period from the time of the merger in 2005 until the filing of the involuntary bankruptcy petition in October 2010.

40.    The Defendants, W. Barnes and Woodard, had no knowledge of the payment defaults occurring in January, April, and June 2008 as a result of the contractual agreement between Plaintiff and Brown Oil until some time in July 2008.

41.    Woodard did not receive any compensation of any kind during the period from the merger in 2005 until the filing of the involuntary bankruptcy petition in October, 2010 as a result of being named a director of Brown Oil in 2005.

42.    Woodard has never been a shareholder of Brown Oil.

43.    Woodard did not receive any benefit of any kind, monetary or otherwise, as a result

8

of payment defaults by Brown Oil with regard to the contractual agreement with Plaintiff.

44.    At the time of the merger of the corporations in 2005, W. Barnes received a limited amount of non-voting stock in the merged corporation, Brown Oil, by virtue of having owned stock in its predecessor in interest, Wilson Petroleum Company, Inc.

45.    As a result of the merger in 2005, W. Barnes agreed to become a guarantor of approximately $925,000.00 in secured debt owed by the merged corporation, Brown Oil, to its secured creditor, BB&T.

46.    At no time during the period from the merger in 2005 until the filing of the involuntary bankruptcy petition in October 2010, did W. Barnes receive any compensation for serving as a director of Brown Oil.

47.    From the time of the merger in 2005 until some time in early 2010, W. Barnes received monthly rental payments from Brown Oil in the amount of $2,500.00 for the lease of a convenience store owned by W. Barnes located in Wilson County, North Carolina.  On multiple occasions, W. Barnes also received $1,800.00 as a monthly rental payment from Brown Oil during the same period for Brown Oil's lease of a convenience store located in Wilson County, North Carolina owned by Barnes Properties, Incorporated which is a closely held family corporation.  These payments were made to W. Barnes in the regular course of business by Brown Oil.

48.    During the period from the merger in 2005 until some time in 2009, W. Barnes received approximately $1,750.00 per month from Brown Oil to compensate him for the sale of Wilson Petroleum stock to Brown Oil as well as compensation for his

agreement to guarantee approximately $925,000.00 in secured debt owed by Brown Oil to BB&T.

49.    Plaintiff offered no evidence to show the officers and directors of Brown Oil engaged in a plan to wind-up and close the business operation and/or dissolve the corporation during the period from the time of the merger in 2005 until the filing of the involuntary bankruptcy petition in October 2010.

50.    During the period from the merger in 2005 until the filing of the involuntary bankruptcy petition in October 2010, M. Barnes and/or Brown continued to operate Brown Oil in an attempt to generate income needed to pay secured and unsecured creditors of Brown Oil.

51.    W. Barnes received no benefit of any kind, monetary or otherwise, from the payment defaults committed by Brown Oil in 2008 which resulted in the termination of the contractual agreement with Plaintiff.

52.    Brown continued to receive a salary from Brown Oil until his termination as an employee some time in 2009.  M. Barnes continued to receive compensation in the nature of a salary until January 2011.  The salaries received by Brown and M. Barnes were in exchange for services rendered to Brown Oil.  Brown and M. Barnes did receive an increase in salary and received some employment benefits such as insurance, etc., but nothing out of the ordinary for a business of this kind.

53.    At no time did Plaintiff seek relief from this Court by way of equitable lien, constructive trust, or the appointment of a receiver with regard to the issue of whether or not the salaries or other benefits paid by Brown Oil to Brown and M. Barnes were

excessive, unduly beneficial, or otherwise inappropriate.

54.   The fuel delivered by Plaintiff to Brown Oil during the period from December 2007 through June 2008 resulted in charges owed by Brown Oil to Plaintiff in the amount of $867,194.70.

55.   Money paid by Brown Oil to BB&T, including but not limited to, money resulting from the liquidation of secured assets as requested by BB&T, were subject to secured liens held by BB&T on accounts receivable, inventories, etc.  Plaintiff was not entitled to any of the money paid to BB&T as a secured creditor of Brown Oil during the period from the time of the merger in 2005 through and including the date of trial as Plaintiff was an unsecured creditor.

56.   At the time of the filing of the involuntary bankruptcy petition against Brown Oil in October 2010, Brown Oil owed debt in excess of $800,000.00 to numerous unsecured creditors (not including Plaintiff); and the total debt owed by Brown Oil to unsecured creditors including the Plaintiff was in excess of $1,600,000.00.  As a result of paying the BB&T debts, Brown Oil's assets were unencumbered.

57.   At all times during the period from the merger in 2005, until the filing of the involuntary petition against Brown Oil in October 2010, Brown Oil's liabilities were substantially in excess of the value of its assets, but the corporation generated sufficient cash flow to continue operating the business through and including the filing of the involuntary petition in 2010.

58.   Plaintiff has offered no evidence to prove the individually named Defendants, Brown, M. Barnes, Woodard, and W. Barnes, were unjustly enriched in any way as a result

11

of the payment defaults committed against Plaintiff in 2008.

## PROPOSED CONCLUSIONS OF LAW

1.    This Court has jurisdiction over the parties and the subject matter of this cause of action pursuant to 28 U.S.C. §§ 151, 157(a) and the general Referral Order from the U.S. District Court, Eastern District of North Carolina dated August 3, 1984.

2.    The parties have heretofore entered into a Consent Order with regard to jurisdiction consistent with that certain holding in *Stern v. Marshall*, 564 U.S. _____, 131 S. Ct. 2594, 2011 WL 2472792 (June 23, 2011) and 28 U.S.C. §§ 151, 157(a) and the general Referral Order from the U. S. District Court, Eastern District of North Carolina dated August 3, 1984.

3.    Plaintiff's claims for relief for breach of contract (claim one) and objection to dischargeability of debt under 11 U.S.C. § 523(a)(2), (7) (claims nine and ten) are core proceedings and Court has authority to enter final judgment pursuant to 28 U.S.C. § 157(b).[1]

4.    The remaining claims for relief are non-core proceedings and this Court is authorized to submit Proposed Findings of Fact and Conclusions of Law related thereto to the United States District Court pursuant to 28 U.S.C. § 157(c)(1) and as provided under Federal Rule of Bankruptcy Procedure 9033.

5.    The directors of Brown Oil, Brown, M. Barnes, W. Barnes, and Woodard, did not owe any fiduciary duty to Plaintiff with regard to payment defaults because Brown

---

[1]The bankruptcy court for the Eastern District of North Carolina entered an order and judgment on the claim for relief of breach of contract and an order on the objections to dischargeability under 11 U.S.C. § 523(a)(2), (7), claims one, nine, and ten on June 21, 2012.

12

Oil did not at any time engage in a plan to wind-up business operations and/or engage in a plan to dissolve the corporation prior to the filing of an involuntary bankruptcy petition in October 2010.

6.  The individual Defendants, Brown, M. Barnes, W. Barnes, and Woodard, were not parties to nor did they breach the terms of the contractual agreement between Plaintiff and Brown Oil which was the subject of this cause of action.

7.  The individual Defendants, Brown, M. Barnes, W. Barnes, and Woodard, have incurred no individual liability with regard to the breach of contract committed by Brown Oil as alleged in Plaintiff's First Claim of Relief.

8.  Plaintiff has offered no evidence to prove Defendants are liable to Plaintiff based on unjust enrichment/constructive trust/equitable lien as alleged in Plaintiff's Second Claim of Relief.

9.  Plaintiff has offered no evidence to prove Defendants are liable to Plaintiff for acts of fraud as alleged in Plaintiff's Third Claim of Relief.  Plaintiff offered no evidence that an officer or director of Brown Oil made a false representation or acted to conceal a material fact in relation to Plaintiff.

10.  Plaintiff has offered no evidence to prove Defendants are liable to Plaintiff for negligent misrepresentation as alleged in Plaintiff's Fourth Claim of Relief.

11.  Plaintiff has offered no evidence to prove Defendants are liable to Plaintiff for breach of fiduciary duty/constructive fraud as alleged in Plaintiff's Fifth Claim of Relief.

12.  Plaintiff has offered no evidence to prove Defendants are liable to Plaintiff for unfair and deceptive trade practices as alleged in Plaintiff's Sixth Claim of Relief.

13.    Plaintiff has offered no evidence to prove Defendants are liable to Plaintiff for civil conspiracy as alleged in Plaintiff's Seventh Claim of Relief.

14.    Plaintiff has offered no evidence to prove Defendants are liable to Plaintiff for a Uniform Fraudulent Transfer Act (USTA) violation as alleged in Plaintiff's Eighth Claim of Relief.

15.    Plaintiff has failed to offer evidence necessary to allow Plaintiff to pierce the corporate veil as set out in Plaintiff's Eleventh Claim of Relief for piercing the corporate veil.

BASED ON THE FOREGOING PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW, THE BANKRUPTCY COURT PROPOSES JUDGMENT BE ENTERED AS FOLLOWS:

1.    Plaintiff has failed to prove the allegations set forth in the Second Claim of Relief: unjust enrichment/constructive trust/equitable lien, and therefore, the same is denied.

2.    Plaintiff has failed to prove the allegations set forth in the Third Claim of Relief: fraud, and therefore, the same is denied.

3.    Plaintiff has failed to prove the allegations set forth in the Fourth Claim of Relief: negligent misrepresentation, and therefore, the same is denied.

4.    Plaintiff has failed to prove the allegations set forth in the Fifth Claim of Relief: breach of fiduciary duty/constructive fraud, and therefore, the same is denied.

5.    Plaintiff has failed to prove the allegations set forth in the Sixth Claim of Relief: unfair and deceptive trade practices, and therefore, the same is denied.

6.    Plaintiff has failed to prove the allegations set forth in the Seventh Claim of Relief: civil conspiracy, and therefore, the same is denied.

14

7.     Plaintiff has failed to prove the allegations set forth in the Eighth Claim of Relief: Uniform Fraudulent Transfer Act (UFTA) violation, and therefore, the same is denied.

8.     Plaintiff has failed to prove the allegations set forth in the Eleventh Claim of Relief: piercing the corporate veil, and therefore, the same is denied.

9.     Each party shall pay their own costs including attorney's fees in this cause of action.

The Proposed Findings of Fact and Conclusions of Law are hereby filed pursuant to Federal Rule of Bankruptcy Procedure 9033.  The Clerk of Court shall serve forthwith copies on all parties by mail and note the date of mailing on the docket.

**END OF DOCUMENT**